**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JULIE I. CHAMPION,

                                          Plaintiff,

          v.                                              No. 05-CV-485
                                                              (DNH/DRH)

MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,

                                          Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

HINMAN, HOWARD & KATTELL, LLP        EUGENE D. FAUGHNAN, ESQ.
Attorney for Plaintiff
Post Office Box 5250
700 Security Mutual Building
80 Exchange Street
Binghamton, New York 13902-5250

HON. GLENN T. SUDDABY                    WILLIAM H. PEASE, ESQ.
United States Attorney for the              Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER[2]**

          Plaintiff Julie I. Champion ("Champion") brought this action pursuant to 42 U.S.C. §

405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for benefits under the Social Security Act.

_____

          [1]  Michael J. Astrue is the current Commissioner of Social Security.  He shall be
substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d)(1).

          [2]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

Champion moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings.  Docket Nos. 5, 8.  For the reasons which follow, it is recommended that the Commissioner's decision be affirmed.

## I.  Procedural History

On December 13, 2002, Champion protectively filed an application for disability insurance benefits ("DIB") pursuant to the Social Security Act, 42 U.S.C. § 401 et seq.  T. 43-45.[3]  On November 4, 2003, the application was denied.  T. 34-37.  Champion requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Ellen G. Ritteman on July 16, 2004.  T. 374-419.  In a decision dated October 6, 2004, the ALJ held that Champion was not entitled to disability benefits.  T. 10-19.  On December 6, 2004, Champion filed a request for review with the Appeals Council.  T. 367. The Appeals Council denied Champion's request on February 18, 2005, thus making the ALJ's findings the final decision of the Commissioner.  T. 5-8.  This action followed.

## II.  Contentions

Champion contends that the ALJ failed properly to find that certain conditions were severe impairments, afford controlling weight to her treating physicians' opinions, and credit properly her subjective complaints of pain.  She also contends that the ALJ's residual functional capacity ("RFC") assessment was not supported by substantial evidence and that the ALJ erred by utilizing the Medical-Vocational Guidelines.  The

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 4.

2

Commissioner contends that there was substantial evidence to support the determination that Champion was not disabled.

### III.  Facts

Champion, now forty-one years old, worked as a switchboard operator and a front desk clerk.  T. 378, 388.  She previously worked as a production assistant, inspector in a factory, bank teller, electrician's apprentice, and jewelry salesperson.  T. 81, 382-87. Champion completed one year of college and also received training in professional office technology.  T. 76.  Champion alleges that she became disabled August 6, 2002 due to a back impairment, headaches, and drug and alcohol abuse.  T. 43, 79-80.

### IV.  Standard of Review

### A.  Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.  42 U.S.C. § 1382c(a)(3)(B)

3

(2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 404.1520 and

§ 416.920, to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he [or she] is not, the
> [Commissioner] next considers whether the claimant has a 'severe
> impairment' which significantly limits his [or her] physical or mental ability to
> do basic work activities.  If the claimant suffers such an impairment, the third
> inquiry is whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider him [or her]
> disabled without considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a claimant who is
> afflicted with a 'listed' impairment is unable to perform substantial gainful
> activity.  Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he [or she] has
> the residual functional capacity to perform his [or her] past work.  Finally, if
> the claimant is unable to perform his [or her] past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520,

416.920 (2007).

The plaintiff has the burden of establishing disability at the first four steps.  Shaw v.

Chater, 221 F.3d 126, 132 (2d Cir. 2000).  However, if the plaintiff establishes that an

impairment prevents him or her from performing past work, the burden then shifts to the

Commissioner to determine if there is other work which the claimant could perform.  Id.

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether

the correct legal standards were applied and whether substantial evidence supports the

decision.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002).  Substantial evidence is

4

"'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  Shaw, 221 F.3d at 131 (citations omitted).  It must be "more than a mere

scintilla" of evidence scattered throughout the administrative record.  Richardson v.

Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197,

229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with

sufficient specificity to allow a court to determine whether substantial evidence supports

the decision."  Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y.

Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court,

however, cannot substitute its interpretation of the administrative record for that of the

Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v.

Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by

substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

### V.  Discussion

### A.  Medical Evidence

Champion injured her back at work in 1989, but was able to return to work.  See T.

158.  In March 2002, she again injured her back while working, apparently while carrying a

heavy object.  See T. 158, 167, 382.

### 1.  Treating Sources

From February 1991 to May 2004, Champion received chiropractic treatment every

two to three weeks from Joseph A. Loverro, D.C. and Christopher Gabriels, D.C.  T. 260-72, 342-61.  In an undated letter, Dr. Loverro opined that Champion was limited in her ability to sit due to severe tail bone pain and limited in her abilities to push, pull, carry, walk, and stand due to spinal neurological damage in the areas of C5/C6 and L4/L5.  T. 260.  In a functional assessment completed in September 2003, Dr. Gabriels indicated that Champion was able to stand and walk up to two hours per day and sit up to six hours per day; was limited in her abilities to push and pull using her upper extremities; and was unable to lift or carry any weight on an occasional basis.  T. 261-65.

From April to September, 2002, Champion treated for low back pain with Drs. Sanjiv Patel and David Zander.  T. 163-79.  An MRI of Champion's lumbar spine performed on June 15, 2002 showed an impinged nerve root in the L5 region.  T. 174.  Dr. Patel referred Champion to physical therapy and recommended that she stop working.  T. 165, 167.

On June 5, 2002, Champion was hospitalized due to an overdose of amitriptyline[4] and alcohol intoxication.  T. 134-44.  Champion denied that she attempted suicide and it was found that she was not a threat to herself or others.  T. 134, 140.  It was also noted that Champion felt content, her insight and judgment were good, and she had a good support system and future plans.  T. 140.  Upon discharge two days later, she was referred to an out-patient alcohol rehabilitation program.  T. 134.

From August 2002 to July 2004, Champion saw Kevin Hastings, Jr., D.O., an osteopathic pain management specialist.  T. 188-208, 296-308, 339-40, 363-66.  In July

---

[4]  Amitriptyline, also known as Elavil, is prescribed for the relief of mental depression.  The PDR Pocket Guide to Prescription Drugs (3d ed. 1999) (revised).

6

2004, Dr. Hastings diagnosed Champion as suffering from cervical and lumbar disc disease; cervical, thoracic, and lumbar myofascial strains; shoulder girdle strain; thoracic outlet somatoform disorder; headache; pelvic, pubic, and sacral obliquity; and piriformis and psoas syndrome.  T. 363.  He opined that Champion was unable to engage in substantial gainful employment in a regular and reliable manner.  T. 364.

Champion also underwent physical therapy from May to June, 2002.  T. 145-57.  It was noted on June 10, 2002 that Champion felt that the treatment was "helpful" and that her condition was improving.  T. 145, 146.

### 2.  Examining Sources

On July 29, 2002, Champion was evaluated by Dr. Saeed Bajwa.  T. 158-60.  Dr. Bajwa diagnosed Champion as suffering from left L5 radiculitis secondary to neural foraminal stenosis of left L5 neural foramen, as well as mild right carpal tunnel syndrome. T. 160.  Dr. Bajwa recommended that Champion undergo epidural blocks and return to work in a job that did not require physical labor or lifting heavy objects.  Id.

On October 31, 2002, Champion was examined by Dr. Michael Shende, a neurological surgeon.  T. 161-62.  Dr. Shende found no indication that would "lend itself to interventional surgery."  T. 162.  He recommended that Champion attend a rehabilitation program "to strengthen the structures in her back."  Id.

On July 15, 2003, Champion underwent a consultative orthopedic evaluation at the request of the agency by Mark Henderson, D.O.  T. 249-53.  Dr. Henderson diagnosed Champion as suffering from, inter alia, a history of chronic low back pain and neck pain. T. 252.  He found that Champion had a marked restriction for heavy lifting, carrying, and

7

for heavy pushing and pulling as well as a mild restriction for prolonged standing, walking, and sitting.  Id.

On July 28, 2003, Champion underwent a consultative psychiatric examination at the request of the agency by Marion Graff, Ph.D.  T. 255-59.  Dr. Graff found that the results of the examination "do not appear to be consistent with any psychiatric problems that would significantly interfere with the claimant's ability to function on a daily basis."  T. 258.  Dr. Graff also found that the "primary obstacles to her effective daily functioning appear to be medical at this time."  Id.


### 3.  Non-Examining Sources

The record also contains a psychiatric review technique form completed by C. Richard Nobel, Psy. D., a non-examining State agency physician, on October 27, 2003.  T. 273-87.  Dr. Nobel found that Champion suffered from no mental impairment.  Id.


### B.  Severity

Champion contends that the ALJ failed properly to assess the severity of certain conditions.  Docket No. 5 at pp. 6-7.  The Commissioner contends that the ALJ properly evaluated severity.  Docket No. 8 at pp. 14-17.

As mentioned above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities.  See Part IV.A supra.  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most

jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b) (2007).  Basic work activities which are

relevant for evaluating the severity of a physical impairment include physical functions

such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.

Id.; see Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y.1996).

An impairment is severe if it significantly limits physical or mental abilities to do

basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Age, education, and work

experience are not evaluated in determining if the impairment or combination of

impairments are severe.  Id.  The severity analysis does no more than "screen out de

minimis claims."  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).  If the disability

claim rises above the de minimis level, then further analysis is warranted.  Id.  Where a

claimant alleges multiple impairments, the combined effects of all impairments must be

considered, regardless of whether any impairment, if considered separately, would be of

sufficient severity.  The next inquiry is whether a claimant retained the RFC to perform his

or her past work.  This inquiry must consider the combined effect of any impairments,

whether or not they are severe, through the remaining steps.  20 C.F.R. §§ 404.1523,

416.923 (2007); Dixon, 54 F.3d at 1031.

Here, the ALJ found that Champion had severe impairments of degenerative disc

disease of the lumbar and cervical spine, but that these impairments did not meet or equal

a listed impairment.  T. 14.  Champion contends that the ALJ erred by failing to find that

her depression, headaches, and drug and alcohol abuse were severe impairments.


## 1.  Depression

The ALJ found that Champion's depression was not a severe impairment.  T. 15.

9

In so finding, the ALJ discussed the results of the psychiatric evaluation performed by Dr. Graff.  Id.  The ALJ noted that Dr. Graff found no psychiatric problems that would significantly interfere with Champion's ability to function on a daily basis.  Id.  Dr. Graff also found that Champion was capable of following, understanding, and remembering simple instructions and directions; performing simple and complex tasks with supervision and independently; maintaining attention and concentration for tasks and regularly attending to a routine and maintaining a schedule; making appropriate decisions; learning new tasks; relating and interacting appropriately with others; and dealing with stress.  T. 258.

Additionally, during Champion's hospitalization for an overdose of amitriptyline[5] and alcohol intoxication, it was noted that she denied attempting suicide and it was found that she was not a threat to herself or others.  T. 134, 140.  It was also noted that she felt content, her insight and judgment were good, and she had a good support system and future plans.  T. 140.  Upon discharge, she was referred only to an out-patient alcohol rehabilitation program.  T. 134.

Following the hospitalization, she saw her treating physician, Dr. Patel, who noted on June 20, 2002 that Champion "has no history of depression . . . ."  T. 165.  Similarly, on October 27, 2003, Dr. Nobel, a non-examining State agency physician, found that Champion suffered from no mental impairment.  T. 273-87.

In sum, Champion failed to show that she was significantly limited by depression in

---

[5]  While amitriptyline is prescribed for pain relief as well as for the treatment of depression, it appears that Champion was prescribed this medication for pain relief.  See T. 140.  Moreover, Champion referred to it as "pain medication."  T. 405.

her abilities to perform basic work activities.  Thus, the ALJ properly found that Champion's depression was not a severe impairment.


## 2.  Headaches

The ALJ noted that Champion complained of experiencing headaches, but the ALJ did not find that Champion's headaches were a severe impairment.  T. 16.  While the record reflects that Champion was diagnosed as suffering from headaches, see T. 363, it is not sufficient for a claimant to establish the mere presence of a disease or impairment; instead the claimant must show that the disease or impairment has caused functional limitations that preclude her from engaging in any substantial gainful activity.  See Rivera v. Harris, 623 F.2d 212, 215-16 (2d Cir. 1980).   Champion fails to establish that her headaches caused functional limitations that precluded her from engaging in any substantial gainful activity.  Thus, the ALJ properly found that Champion's headaches were not a severe impairment.


## 3.  Drug and Alcohol Abuse

Following Champion's hospitalization, she saw her treating physician, Dr. Patel, who noted on June 20, 2002 that Champion stated that "she has not had a drop of alcohol since the [hospitalization] and does not have the desire to drink."  T. 165.  Dr. Patel also noted that Champion stated that "she has good control of herself and does not feel that she needs counseling or referral to an outpatient rehab[ilitation] center."  Id.  In July 2002, Dr. Bajwa noted that Champion described herself as a "nondrinker."  T. 159.  Similarly, in

11

November 2002, Dr. Shende noted that Champion stated that she "no longer drinks." T.

161. Also, in July 2003, Dr. Graff noted that Champion "denies having a drug or alcohol

abuse problem now or at any time in the past." T. 256. It is noted that the record shows

no further hospitalizations due to drug or alcohol intoxication.

In sum, Champion fails to establish that she was significantly limited in her abilities

to perform basic work activities due to drugs or alcohol. In light of the foregoing, the ALJ

properly found that Champion did not suffer from a severe impairment based on drug and

alcohol abuse.

Accordingly, it is recommended that the Commissioner's determination in this

regard be affirmed.


## C.  Treating Physician's Rule

Champion contends that the ALJ improperly discounted the opinions of all of her

treating physicians. Docket No. 5 at pp. 8-10. The Commissioner contends that the ALJ

properly evaluated the opinion evidence. Docket No. 8 at pp. 20-21.

When evaluating a claim seeking disability benefits, factors to be considered

include objective medical facts, clinical findings, the treating physician's diagnoses,

subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd.,

948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source.

Under the regulations, a treating source's opinion is entitled to controlling weight if

well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2) (2007); Shaw, 221 F.3d at 134.  Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

 The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. §§ 404.1527(e), 416.927(e) (2007).

 First, contrary to Champion's claim, the ALJ did not discount the opinions rendered by "all" of the treating physicians.  In her decision, the ALJ discussed the various opinions rendered by the treating and examining physicians.  See T. 15-17.  The ALJ then noted that she gave Dr. Hastings's opinion less than significant weight because the opinion addressed the ultimate issue of disability, which is reserved to the Commissioner, and because the opinion was not supported by objective medical evidence of record.  T. 16. Thus, the ALJ did not discount the opinions rendered by all of the treating physicians.

 Second, the ALJ properly evaluated Dr. Hastings's opinion.  Dr. Hastings opined that Champion was unable to engage in substantial gainful employment in a regular and reliable manner.  T. 364.  The ALJ properly assigned less than controlling weight to this

opinion because it addressed the ultimate issue that was reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e), 416.927(e).  Moreover, the regulations provide that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Thus, the ALJ was not bound by Dr. Hastings' opinion and properly assigned it less than controlling weight.  Therefore, it is recommended that the Commissioner's finding in this regard be affirmed.


### D.  Credibility

Champion contends that the ALJ ignored and improperly discounted her allegations of disabling pain.  Docket No. 5 at pp. 10-12.  The Commissioner contends that the ALJ properly considered Champion's symptoms.  Docket No. 8 at pp. 21-22.

The basis for establishing disability includes subjective complaints of pain even where the pain is unsupported by clinical or medical findings provided that the underlying impairment can be "medically ascertained."  20 C.F.R. §§ 404.1529, 416.929 (2007); see also Snell, 177 F.3d at 135.  A finding that a claimant suffered from disabling pain requires medical evidence of a condition that could reasonably produce such pain.  An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence.  20 C.F.R. §§ 404.1529, 416.929; Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain.  Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  If there is a rejection of the claims of

disabling pain, the ALJ must provide specific reasons for doing so.  Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999).  If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings.  Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983).  The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

15

As can be seen from her decision, the ALJ acknowledged the existence of severe impairments but found Champion "not to be fully credible" based principally on Champion's conservative course of treatment, limited medical findings, and Champion's reported activities.  T. 16-17.  In so finding, the ALJ reviewed the medical evidence and Champion's testimony, in some detail, and discussed the relevant factors set forth in the regulations, including the location, duration, frequency, and intensity of her pain or other symptoms; precipitating and aggravating factors; the type and side effects of medication taken; treatment received other than medication; and measures used to relieve pain.  T. 15-17; see 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ's rejection of Champion's subjective complaints is also supported by Champion's own statements.  At the hearing, Champion stated that her daily activities included taking care of two pets, trying to do housework, taking care of personal needs, and cooking meals approximately four days a week.  T. 397-402.  She also stated that twice a week, she attended physical therapy and ran "any" errands "that I have to do."  T. 397-98.  She stated that she was able to walk around her house "even with the discomfort" and stated that she could walk the length of a mall with a friend for exercise.  T. 402-03.  She also estimated that she could stand for "[p]robably" thirty minutes; sit for ten to thirty minutes but had to lean; and could lift a gallon of water.  T. 403-05.  Additionally, in a questionnaire dated July 7, 2003, Champion stated that her daily activities included playing with her pets, stretching, exercising, preparing meals, and reading.  T. 110-11, 113.  She stated that she was unable to lift "more" than ten pounds without pain.  T. 110.  She also stated that she goes outside "almost every day" and is able to drive and shop alone.  T. 112-113.

16

In sum, the ALJ reviewed Champion's testimony in detail and properly concluded that Champion's subjective complaints of pain were not fully credible.  Accordingly, it is recommended that the Commissioner's determination in this regard be affirmed.

### E.  Residual Functional Capacity

Champion essentially contends that substantial evidence does not support the ALJ's findings regarding her RFC and her ability to return to her past relevant work. Docket No. 5 at pp. 7-8.  The Commissioner argues that the ALJ's findings are supported by substantial evidence.  Docket No. 8 at pp. 13-22.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms.  Martone, 70 F. Supp. 2d at 150; see 20 C.F.R. §§ 404.1545, 416.945 (2007).  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).  In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities.  Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy.  New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see also 20 C.F.R. §§ 404.1560, 416.960 (2007).

Here, the ALJ found that Champion had the RFC to perform unskilled sedentary

17

work[6] with a sit/stand option.  T. 17.  Contrary to Champion's contention, the RFC

determination is supported by substantial evidence.  As noted by the ALJ, in July 2002, Dr.

Bajwa opined that Champion was able to perform work which did not require physical

labor or lifting heavy objects.  T. 160.  Nearly a year later, Dr. Henderson found that

Champion had marked restrictions for heavy lifting, carrying, and for heavy pushing and

pulling, and only mild restrictions for prolonged standing, walking, and sitting.  T. 252.

The MRI results also support the RFC determination.  For instance, Dr. Bajwa

found that the June 15, 2002 MRI showed no clear evidence of a herniated lumbar disc.

T. 160.  Dr. Shende noted that while the same MRI showed "some snugness of the thecal

sac with some facet hypertrophy at L4-L5," he did not "see anything here from the clinical

picture and the MR study that would lend itself to interventional surgery."  T. 162.  He also

noted that regarding Champion's cervical spine, she had degenerative disc protrusion at

C5-6 and he recommended seeing a pain therapist but no surgery.  T. 162.

However, Champion contends that "a close examination of the [RFC] as set forth by

the treating physicians directs a contrary conclusion."[7]  Docket No. 5 at p. 8.  To the extent

───────────────────

[6]  By regulation, sedentary work is defined as follows:

Sedentary work involves lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files, ledgers, and small
tools.  Although a sedentary job is defined as one which involves sitting, a
certain amount of walking and standing is often necessary in carrying out job
duties.  Jobs are sedentary if walking and standing are required occasionally
and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (2007).

[7]  Champion fails to identify to which physicians and RFC assessments she refers,
and fails to explain how those RFC assessments would direct a conclusion that is contrary
to the ALJ's determination.

18

that Champion relies on the opinions rendered by her treating chiropractors, Drs. Loverro and Gabriels, "a chiropractor's opinion is not a medical opinion." Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995); see also 20 C.F.R. § 404.1513(a), 404.1527(a)(2).  As such, the Second Circuit has made clear that the ALJ is not required to give controlling weight to a chiropractor's opinion.  Diaz, 59 F.3d at 314.  Therefore, the ALJ was not bound by the opinions rendered by Drs. Loverro and Gabriels, as the opinions were not medical opinions.[8]

Champion also claims that the RFC is further eroded by "the inclusion of certain diagnoses [of depression, headaches, and drug and alcohol abuse] as severe impairments . . . ."  Id.  However, the Court already determined that the ALJ properly found that these alleged conditions were not severe impairments.  See Part V.B supra.

Based on the RFC determination, the ALJ then reviewed the demands of Champion's past work in order to determine whether she could perform any past work.  Champion testified that she was a switchboard operator and front desk greeter at a hospital.  T. 388.  She stated that the job consisted primarily of sitting with the option to stand and "move around."  Id.  She also stated that she "never" had to lift more than ten pounds and at times pushed a cart containing flowers.  Id.  The ALJ then enlisted the testimony of a vocational expert who stated that this work was unskilled sedentary work that was performed long enough for it to be considered past relevant work.  T. 416, 417.  He also stated that this work would provide for the opportunity to change positions.  T.

─────────────────────

[8]  To the extent that Champion relies on the opinion rendered by Dr. Hastings, the Court has already determined that the ALJ properly assigned less than controlling weight to Dr. Hastings's opinion.  See Part V(C) supra.

19

417.

Based on the foregoing, the ALJ's determinations that Champion retained the RFC to perform unskilled sedentary work with a sit/stand option and that she was able to return to her past relevant work are supported by substantial evidence.  Therefore, it is recommended that the ALJ's determination in this regard be affirmed.

### F.  Medical-Vocational Guidelines

Champion contends that the ALJ erred by utilizing the Medical-Vocational Guidelines in light of her non-exertional impairments.  Docket No. 5 at pp. 12-13.  The Commissioner contends that the ALJ properly decided Champion's claim at step four of the sequential evaluation process.  Docket No. 8 at pp. 23-24.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry, 209 F.3d at 122; 20 C.F.R. §§ 404.1560(c), 416.960(c) (2007).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country."  20 C.F.R. §§ 404.1566(a), 416.966(a) (2007).  The ALJ may apply the grids or consult a vocational expert.  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2007).  If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled.  Pratts v. Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

In this case, the ALJ properly considered the medical evidence and the testimony of

a vocational expert in determining at step four that Champion was capable of returning to

her past relevant work.  Thus, the burden never shifted to the Commissioner to prove at

step five that a job existed in the national economy which Champion was capable of

performing, as was acknowledged by Champion's counsel.  See Curry, 209 F.3d at 122;

20 C.F.R. §§ 404.1560(c), 416.960(c); Docket No. 5 at p. 8.  The fact that the ALJ later

referenced the Medical-Vocational Guidelines is of little consequence since the ALJ's

determination at step four was supported by substantial evidence.  Therefore, it is

recommended that the ALJ's determination in this regard be affirmed.


## VI.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**,

Champion's motion for a finding of disability (Docket No. 5) be **DENIED**, and the

Commissioner's cross-motion (Docket No. 8) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of

the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing

Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72, 6(a), 6(e).

DATED:      October 15, 2007
            Albany, New York

_David R. Homer_

United States Magistrate Judge